IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| KRISTIE ALLEN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN ALLEN, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| AXEON SPECIALITY PRODUCTS, LLC; SULFIDE SYSTEM, LLC; KEMPER INDUSTRIES, INC.; DRK CHEMICAL PRODUCTS COMPANY INC.; AKZO NOBEL FUNCTIONAL CHEMICALS LLC; COLONIAL CHEMICAL SOLUTIONS, INC.; L&B TRANSPORT, LLC; YOUNG TRANSPORT, LLC; and QUALITY CARRIERS, INC, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No.: 2:16-cv-02944-DCN

**JURY TRIAL DEMANDED**

**SURVIVAL AND WRONGFUL DEATH ACTION COMPLAINT FOR DAMAGES**

PLAINTIFF KRISTIE ALLEN, individually and as personal representative of the Estate of Brian Allen (the "Estate"), by and through her undersigned counsel of record, hereby files this Survival and Wrongful Death Action Complaint for Damages against the above-captioned Defendants pursuant to the Federal Rules of Civil Procedure, and sections 15-5-90 and 15-51-10 of the South Carolina Code, showing the Court as follows:

**FACTS OF THE CASE**

1.    This case arises out of an explosion and fire which ignited on October 20, 2015, ("the Fire") at a KapStone Paper and Packaging ("KapStone") facility located at 5600 Virginia Avenue, North Charleston, South Carolina 29406.

2.     The deceased, Brian Allen ("Brian"), was an employee of KapStone at the time of the Fire.

3.     Brian and his coworker, Chad Classen, were preparing to conduct a welding project when the Fire occurred in or near three (3) sodium hydrosulfide (NaHS) storage tanks located at KapStone.

4.     NaHS is the product of the half neutralization of hydrogen sulfide with sodium hydroxide.  NaHS is a useful reagent for the synthesis of organic and inorganic sulfur compounds and is used in the papermaking process.

5.     At the time of the Fire, Brian was working on a lift that was positioned above the NaHS tanks.

6.     NaHS, in and of itself, is not a flammable liquid or gas, and there was no indication that the NaHS in the storage tanks was mixed with a flammable liquid or gas.  Yet, the NaHS in the tanks contained hydrocarbons, specifically gasoline.

7.     Based on reasonable information and belief, prior to the Fire, KapStone never purchased NaHS mixed with flammable liquids or gas, nor had KapStone ever added flammable liquids or gas to NaHS or into the storage tanks in which KapStone stored NaHS.

8.     Therefore, Brian reasonably believed that he was not conducting welder operations near any flammable liquid or gas.

9.     The Fire was ignited, and Brian was consumed by the Fire, unable to escape the lift as he was properly tied off in a harness for above-ground work.

10.     KapStone procured NaHS from two separate and distinct supply channels.

11.     One supply line consisted of Defendants Axeon Specialty Products, LLC ("Axeon"), Sulfide Systems, LLC ("Sulfide Systems"), Kemper Industries, Inc. ("Kemper"), and DRK Chemical Products Company, Inc. ("DRK") (collectively "Axeon Supply").

12.     The other supply line consisted of Defendants Akzo Nobel Functional Chemicals, LLC ("Akzo Nobel") and Colonial Chemical Solutions, Inc. ("Colonial") (collectively "Akzo Nobel Supply").

13.     At the time of the Fire, KapStone had purchased NaHS from both supply lines with the intent, understanding, and representation from the Defendants that the NaHS delivered to KapStone did not contain any flammable liquids or gas.

14.     Specifically, during the thirty days before the Fire, deliveries of NaHS were made to KapStone from the Axeon Supply and the Akzo Nobel Supply, and these deliveries were the only lines of NaHS supply delivered to KapStone during said period of time.

15.     Defendant Quality Carriers, Inc. ("Quality") was the transportation company hired by the Axeon Supply Defendants to transport the subject NaHS from Paulsboro, New Jersey, to KapStone.

16.     Defendants L&B Transport, Inc. ("L&B") and Young Transport, LLC ("Young") were the transportation companies hired by the Akzo Nobel Supply Defendants to transport the subject NaHS from Axis, Alabama, to KapStone.

17.     The only other source of hydrocarbon addition or contamination in the subject NaHS, apart from the Axeon Supply Defendants and the Akzo Nobel Supply Defendants, is from L&B and Quality.

18.     L&B, Young and Quality never disclosed to KapStone that their tankers were carrying, delivering, or depositing flammable liquids or gas to KapStone.

19.     Both supply lines deposited NaHS into the storage tanks at KapStone.

20.     The KapStone NaHS tanks have three distinct containers; they are identified as "North," "Central," and "South" containers.

21.     After the Fire, the product contained in all three containers was tested by an independent laboratory.

22.     The independent laboratory verified that the Central and South tanks contained hydrocarbons, specifically gasoline, along with NaHS.

23.     Specifically, the independent laboratory determined the product in the central and south tanks qualified as a Class 1 flammable material.

24.     Based on reasonable information and belief, one—if not both—of the NaHS supply lines to KapStone contained undisclosed hydrocarbons (hereinafter collectively "NaHS in Question").

25.     The NaHS in Question was in essentially the same condition, in all pertinent respects, at the time it was delivered to KapStone prior to the Fire as the condition it was in at the time it was manufactured, designed, tested, and/or transported by the Defendants.

26.     At all times relevant, the NaHS in Question was not altered or misused by KapStone or Brian.

27.     The Fire, which began because the NaHS in Question contained undisclosed hydrocarbons, directly and proximately caused the catastrophic physical, emotional, and financial injuries to Brian, which he suffered from and endured for approximately eight months until his death on June 29, 2016.

28.     The Fire, which began because the NaHS in Question contained undisclosed hydrocarbons, directly and proximately caused Brian's death on June 29, 2016.

29.     The Fire, which began because the NaHS in Question contained undisclosed hydrocarbons, directly and proximately caused significant emotional and financial injuries to Brian's spouse, Plaintiff Kristie Allen ("Plaintiff" or "Kristie"), including her loss of support and consortium.

30.     These events form the basis of Plaintiff's claims alleged in this Survival and Wrongful Death Action Complaint for Damages.  Plaintiff also seeks actual and consequential damages, as well as punitive damages, to halt and deter such conduct from taking place in the future.

## THE PARTIES, JURISDICTION, AND VENUE

31.     At all times relevant until his death, Brian Allen was a citizen of the State of South Carolina, residing in the Town of Summerville, Berkeley County, South Carolina.  At the date of the filing of this Complaint, the Estate of Brian Allen is in probate within the jurisdiction of the Berkeley County Probate Court.

32.     At all times relevant, Kristie Allen was Brian's spouse and a citizen of the State of South Carolina, residing in the Town of Summerville, Berkeley County, South Carolina.  She was appointed the personal representative of the Estate by the Berkeley County Probate Court by order dated August 2, 2016.

33.     Defendant Axeon is a foreign limited liability company with its corporate headquarters and principal place of business located at 1222 Forest Parkway, Paulsboro, New Jersey, 08066-1752.  Axeon is not registered to transact business in South Carolina, and pursuant to section 15-9-245 of the South Carolina Code, can be served service of process through the South Carolina Secretary of State, 1205 Pendleton Street, Suite 525, Columbia, South Carolina 29201.  At all times relevant herein, Axeon conducted substantial business in South Carolina and

purposely availed itself of the privilege of doing business in South Carolina by selling and shipping NaHS to South Carolina. Further, this action arises from Axeon's conduct directed toward South Carolina, arises from a tort committed in whole or in part within South Carolina, and resulted in injuries in South Carolina. Therefore, as to Axeon, personal jurisdiction is proper under South Carolina's long-arm statute. *See* S.C. Code Ann. §§ 36-2-802; -803.

34.     Defendant Sulfide Systems is a foreign company with its corporate headquarters and principal place of business located at 9945 Goodwood Boulevard, Baton Rouge, Louisiana 70815. Sulfide Systems is not registered to transact business in South Carolina, and pursuant to section 15-9-245 of the South Carolina Code, can be served service of process through the South Carolina Secretary of State, 1205 Pendleton Street, Suite 525, Columbia, South Carolina 29201. At all times relevant herein, Sulfide Systems conducted substantial business in South Carolina and purposely availed itself of the privilege of doing business in South Carolina by selling and shipping NaHS to South Carolina. Further, this action arises from Sulfide Systems' conduct directed toward South Carolina, arises from a tort committed in whole or in part within South Carolina, and resulted in injuries in South Carolina. Therefore, as to Sulfide System, personal jurisdiction is proper under South Carolina's long-arm statute. *See* S.C. Code Ann. §§ 36-2-802; -803.

35.     Defendant Kemper is a foreign company with its corporate headquarters and principal place of business located at 27211 North Pollard Road, Daphne, Alabama, 36526-1172. Kemper is not registered to transact business in South Carolina, and pursuant to section 15-9-245 of the South Carolina Code, can be served service of process through the South Carolina Secretary of State, 1205 Pendleton Street, Suite 525, Columbia, South Carolina 29201. At all times relevant herein, Kemper conducted substantial business in South Carolina and purposely

availed itself of the privilege of doing business in South Carolina by selling and shipping NaHS to South Carolina.  Further, this action arises from Kemper's conduct directed toward South Carolina, arises from a tort committed in whole or in part within South Carolina, and resulted in injuries in South Carolina.  Therefore, as to Kemper, personal jurisdiction is proper under South Carolina's long-arm statute.  *See* S.C. Code Ann. §§ 36-2-802; -803.

36.     Defendant DRK is a foreign company with its corporate headquarters and principal place of business located at 27211 North Pollard Road, Daphne, Alabama, 36526-1172.  DRK is not registered to transact business in South Carolina, and pursuant to section 15-9-245 of the South Carolina Code, can be served service of process through the South Carolina Secretary of State, 1205 Pendleton Street, Suite 525, Columbia, South Carolina 29201.  At all times relevant herein, DRK conducted substantial business in South Carolina and purposely availed itself of the privilege of doing business in South Carolina by selling and shipping NaHS to South Carolina.  Further, this action arises from DRK's conduct directed toward South Carolina, arises from a tort committed in whole or in part within South Carolina, and resulted in injuries in South Carolina.  Therefore, as to DRK, personal jurisdiction is proper under South Carolina's long-arm statute.  *See* S.C. Code Ann. §§ 36-2-802; -803.

37.     Defendant Akzo Nobel is a foreign limited liability company with its corporate headquarters and principal place of business located at 7 Livingstone Avenue, Dobbs Ferry, New York, 10522-2222.  Akzo Nobel is not registered to transact business in South Carolina, and pursuant to section 15-9-245 of the South Carolina Code, can be served service of process through the South Carolina Secretary of State, 1205 Pendleton Street, Suite 525, Columbia, South Carolina 29201.  At all times relevant herein, Akzo Nobel conducted substantial business in South Carolina and purposely availed itself of the privilege of doing business in South

Carolina by selling and shipping NaHS to South Carolina. Further, this action arises from Akzo Nobel's conduct directed toward South Carolina, arises from a tort committed in whole or in part within South Carolina, and resulted in injuries in South Carolina. Therefore, as to Akzo Nobel, personal jurisdiction is proper under South Carolina's long-arm statute. *See* S.C. Code Ann. §§ 36-2-802; -803.

38.     Defendant Colonial is incorporated in Georgia with its corporate headquarters and principal place of business located at 916 W. Lathrop Ave, Savannah, Georgia 31415. Colonial is registered to transact business in South Carolina with the South Carolina Secretary of State, and its appointed agent for service of process is Jack L. Goodman, 107 Caffrey Court, Summerville, South Carolina 29485. At all times relevant herein, Colonial conducted substantial business in South Carolina and purposely availed itself of the privilege of doing business in South Carolina by selling and shipping NaHS to South Carolina. Further, this action arises from Colonial's conduct directed toward South Carolina, arises from a tort committed in whole or in part within South Carolina, and resulted in injuries in South Carolina. Therefore, as to Colonial, personal jurisdiction is proper under South Carolina's long-arm statute. *See* S.C. Code Ann. §§ 36-2-802; -803.

39.     Defendant L&B is a foreign limited liability company with its corporate headquarters and principal place of business located at 624 Highway 190 West, Port Allen, Louisiana, 70767-3816. L&B is not registered to transact business in South Carolina, and pursuant to section 15-9-245 of the South Carolina Code, can be served service of process through the South Carolina Secretary of State, 1205 Pendleton Street, Suite 525, Columbia, South Carolina 29201. At all times relevant herein, L&B conducted substantial business in South Carolina and purposely availed itself of the privilege of doing business in South Carolina

by selling and shipping NaHS to South Carolina. Further, this action arises from L&B's conduct directed toward South Carolina, arises from a tort committed in whole or in part within South Carolina, and resulted in injuries in South Carolina. Therefore, as to L&B, personal jurisdiction is proper under South Carolina's long-arm statute. *See* S.C. Code Ann. §§ 36-2-802; -803.

40.     Defendant Young is a foreign limited liability company with its corporate headquarters and principal place of business located at 191 Telegraph Road, Mobile, Alabama, 36610. Young is not registered to transact business in South Carolina, and pursuant to section 15-9-245 of the South Carolina Code, can be served service of process through the South Carolina Secretary of State, 1205 Pendleton Street, Suite 525, Columbia, South Carolina 29201. At all times relevant herein, Young conducted substantial business in South Carolina and purposely availed itself of the privilege of doing business in South Carolina by selling and shipping NaHS to South Carolina. Further, this action arises from Young's conduct directed toward South Carolina, arises from a tort committed in whole or in part within South Carolina, and resulted in injuries in South Carolina. Therefore, as to Young, personal jurisdiction is proper under South Carolina's long-arm statute. *See* S.C. Code Ann. §§ 36-2-802; -803.

41.     Defendant Quality is a foreign limited liability company with its corporate headquarters and principal place of business located at 4041 Park Oaks Boulevard, Suite 200, Tampa, Florida 33610. Quality is not registered to transact business in South Carolina, and pursuant to section 15-9-245 of the South Carolina Code, can be served service of process through the South Carolina Secretary of State, 1205 Pendleton Street, Suite 525, Columbia, South Carolina 29201. At all times relevant herein, Quality conducted substantial business in South Carolina and purposely availed itself of the privilege of doing business in South Carolina by selling and shipping NaHS to South Carolina. Further, this action arises from Quality's

conduct directed toward South Carolina, arises from a tort committed in whole or in part within South Carolina, and resulted in injuries in South Carolina. Therefore, as to Quality, personal jurisdiction is proper under South Carolina's long-arm statute. *See* S.C. Code Ann. §§ 36-2-802; -803.

42.     This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332.

43.     Venue of this action properly lies in the District of South Carolina, pursuant to 28 U.S.C. § 1391(a), and within the Charleston Division, pursuant to Local Civil Rule 3.01 (D.S.C.), as it is the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred.

## CONDITIONS PRECEDENT

44.     All conditions precedent to the filing of this action and to Plaintiff's right to the relief sought have occurred, have been performed, or have been excused.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Products Liability: Strict Liability**
**(Against All Defendants)**

45.     Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

46.     At all relevant times, there was in full force and effect certain statutes of the State of South Carolina pertaining to sellers of defective products as set forth in section 15-73-10 *et seq.* of the South Carolina Code.

47.     Pursuant to S.C. Code § 15-73-10 *et seq.*, Defendants are strictly liable in tort, irrespective of privity, for manufacturing, designing, assembling, and placing a defective and unreasonably dangerous product in the stream of commerce to injure Brian and Kristie.

48.     Defendants had an active role in the manufacture, design, testing, and/or transportation of the NaHS in Question, including, but not limited to, its chemical components and the accompanying MSDS forms.

49.     The NaHS in Question was neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendants.

50.     At all relevant times, including when the incident alleged herein occurred, the NaHS in Question was used in an intended and/or foreseeable manner.

51.     Neither Brian nor KapStone misused nor materially altered the NaHS in Question, and at the time of the incident complained of herein, the NaHS in Question was in the same or substantially similar condition that they were in at the time of sale.

52.     The NaHS in Question failed to perform in a manner reasonably expected in light of their nature and intended function.

53.     Additionally, the risks inherent in the design and manufacture of the NaHS in Question outweigh the utility of the product as designed.

54.     Defendants manufactured, designed, tested, and placed the NaHS in Question, a defective and unreasonably dangerous product, in the stream of commerce and failed to:

(i)     Properly design, manufacture, test, and transport the NaHS in Question as it contained hydrocarbons, believed to be gasoline; qualifying the NaHS in Question as a Class 1 flammable material;

(ii)     Adopt and implement adequate safety hierarchy procedures and policies in design, manufacture, testing and transportation of the NaHS in Question;

(iii)     Adopt and implement adequate safeguards into the design, manufacture, testing and transportation; and

(iv)    Perform other acts as the evidence may show.

55.    As a direct and proximate result of its defective condition, the NaHS in Question ignited on October 20, 2015.

56.    The ignition caused by the defective condition of the NaHS in Question was the direct and proximate cause of the Fire at KapStone on October 20, 2015.

57.    The ignition caused by defective condition of the NaHS in Question directly and proximately caused Brian to:

(i)    Suffer serious personal injuries;

(ii)    Endure physical pain and suffering;

(iii)    Suffer mental and emotional distress;

(iv)    Incur unnecessary medical expenses;

(v)    Suffer lost wages and loss of earning capacity;

(vi)    Endure disfigurement;

(vii)    Suffer emotional distress, mental anguish, terror, knowledge of bodily injury and impending death;

(viii)    Funeral expenses; and

(ix)    Suffer other injuries as the evidence may show.

58.    The ignition caused by defective condition of the NaHS in Question directly and proximately caused Kristie to:

(i)    Suffer mental and emotional distress;

(ii)    Incur unnecessary expenses in connection with the care of Brian;

(iii)    Endure a loss of consortium, comfort, and society; and

(iv)    Suffer other injuries as the evidence may show.

59.    By reason of the foregoing and pursuant to sections 15-5-90 and 15-51-10 of the South Carolina Code, Plaintiff is entitled to recover for all damages directly and proximately caused by Defendants and the defective condition of NaHS in Question when sold.

## SECOND CAUSE OF ACTION
### Gross Negligence and Negligence
### (Against Axeon Supply Defendants and Akzo Nobel Supply Defendants)

60.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

61.    Defendants had an active role in the manufacture, design, testing, and/or transportation of the NaHS in Question.

62.    Defendants owed Brian and Kristie a duty of reasonable care in manufacture, design, testing, and/or transportation of the NaHS in Question.

63.    The NaHS in Question was neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendants.

64.    At all relevant times, including when the incident alleged herein occurred, the NaHS in Question was used in an intended and/or foreseeable manner.

65.    Neither Brian nor KapStone misused nor materially altered the NaHS in Question and at the time of the incident complained of herein, the NaHS in Question, was in the same or substantially similar condition that they were in at the time of sale.

66.    The NaHS in Question failed to perform in a manner reasonably expected in light of their nature and intended function.

67.    Additionally, the risks inherent in the design and manufacture of the NaHS in Question outweigh the utility of the products as designed.

68.    Defendants were negligent, grossly negligent, willful, wanton, reckless, and careless in manufacturing, designing, testing, and placing the NaHS in Question, a defective and unreasonably dangerous product, in the stream of commerce and breached their respective duties to Brian and Kristie by:

(i)    Failing to exercise reasonable care and precautions in the design, manufacture, testing, and transportation of the NaHS in Question, as it contained hydrocarbons, despite Defendants' verified documentation and MSDS sheets representing that the NaHS in Question did not contain hydrocarbons;

(ii)    Failing to exercise reasonable care and precautions to prevent hydrocarbons from being present in the NaHS in Question;

(iii)    Failing to disclose the presence of hydrocarbons in the NaHS in Question as required by federal law;

(iv)    Failing to adopt and implement adequate safety hierarchy procedures and policies in the design, manufacture, testing, and distribution of the NaHS in Question;

(v)    Failing and implement adequate safety failing to incorporate safeguards into the design, manufacture, testing and distribution of the NaHS in Question; and

(vi)    Failing to perform other acts as the evidence may show.

69.    As a direct and proximate result of its defective condition, the NaHS in Question ignited on October 20, 2015.

70.    The ignition caused by the defective condition of the NaHS in Question was the direct and proximate cause of the Fire at KapStone on October 20, 2015.

71.    The ignition caused by defective condition of the NaHS in Question directly and proximately caused Brian to:

(i)      Suffer serious personal injuries;

(ii)     Endure physical pain and suffering;

(iii)    Suffer mental and emotional distress;

(iv)    Incur unnecessary medical expenses;

(v)     Suffer lost wages and loss of earning capacity;

(vi)    Endure disfigurement;

(vii)   Suffer emotional distress, mental anguish, terror, knowledge of bodily injury and

impending death;

(viii)  Funeral expenses; and

(ix)    Suffer other injuries as the evidence may show.

72.    The ignition caused by the defective condition of the NaHS in Question directly

and proximately caused Kristie to:

(i)      Suffer mental and emotional distress;

(ii)     Incur unnecessary expenses in connection with the care of Brian;

(iii)    Endure a loss of consortium, comfort, and society; and

(iv)    Suffer other injuries as the evidence may show.

73.    By reason of the foregoing and pursuant to sections 15-5-90 and 15-51-10 of the

South Carolina Code, Plaintiff is entitled to recover for all damages directly and proximately

caused by Defendants and the defective condition of NaHS in Question when sold.

### THIRD CAUSE OF ACTION
**Products Liability: Failure to Warn**
**(Against All Axeon Supply and Akzo Nobel Supply Defendants)**

74.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth

fully herein.

75.     Defendants had an active role in the manufacture, design, testing, and/or transportation the NaHS in Question and therefore owed a duty to give adequate warnings of the dangers of which they knew or reasonably should have known could arise from the use of its respective product, components, and chemical composition.

76.     Defendants had actual or constructive knowledge that the intended use of the NaHS in Question created a danger for the ultimate consumer during the foreseeable and anticipated use of the product it sold.

77.     Defendants therefore had a duty to warn of the foreseeable dangers arising from the use of the NaHS in Question and inform third parties of the facts which make the NaHS in Question dangerous to users and consumers.

78.     Specifically,

(i)     Defendants knew or reasonably should have known that the NaHS in Question contained hydrocarbons and failed to disclose the same; and,

(ii)     Defendants knew or reasonably should have known that the NaHS in Question was a Class 1 flammable material and failed to warn KapStone or the ultimate user.

79.     Defendants breached these respective duties by failing to provide adequate warnings of the potential risks of the NaHS in Question and by failing to adequately communicate those warnings to the ultimate consumer.

80.     The Defendants' failure to warn of the dangers associated with the NaHS in Question directly and proximately caused Brian to:

(i)     Suffer serious personal injuries;

(ii)     Endure physical pain and suffering;

(iii)     Suffer mental and emotional distress;

(iv)     Incur unnecessary medical expenses;

(v)      Suffer lost wages and loss of earning capacity;

(vi)     Endure disfigurement;

(vii)    Suffer emotional distress, mental anguish, terror, knowledge of bodily injury and

impending death;

(viii)   Funeral expenses; and

(ix)     Suffer other injuries as the evidence may show.

81.     The ignition caused by the defective condition of the NaHS in Question directly

and proximately caused Kristie to:

(i)      Suffer mental and emotional distress;

(ii)     Incur unnecessary expenses in connection with the care of Brian;

(iii)    Endure a loss of consortium, comfort, and society; and

(iv)     Suffer other injuries as the evidence may show.

82.     By reason of the foregoing and pursuant to sections 15-5-90 and 15-51-10 of the

South Carolina Code, Plaintiff is entitled to recover for all damages directly and proximately

caused by Defendants and the defective condition of NaHS in Question when sold.

## FOURTH CAUSE OF ACTION
### Negligence
### (Against Defendants L&B, Young and Quality)

83.     Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth

fully herein.

84.     Defendants were responsible for transporting and delivering the subject NaHS in

the same condition as it was received from its respective shipper to KapStone.

85.     Defendants had a duty of reasonable care to deliver and deposit NaHS that did not contain hydrocarbons.

86.     Defendants were negligent, grossly negligent, willful, wanton, reckless, and careless in the transportation, delivery, and depositing of the NaHS in Question, a defective and unreasonably dangerous product, in the stream of commerce, and breached their respective duties to Brian and Kristie by:

(i)     Failing to exercise reasonable care and precautions in the transportation and delivery to KapStone of the NaHS in Question, which contained hydrocarbons added by Defendants, if the hydrocarbons were not added by the Axeon Supply Defendants and Akzo Nobel Supply Defendants;

(ii)     Failing to warn KapStone that the NaHS was a Class 1 flammable material;

(iii)     Failing to adopt and implement adequate safeguards into the transportation process to prevent contamination; and

(iv)     Failing to perform other acts as the evidence may show.

87.     As a direct and proximate result of its defective condition, the NaHS in Question ignited on October 20, 2015.

88.     The ignition caused by the defective condition of the NaHS in Question was the direct and proximate cause of the Fire at KapStone on October 20, 2015.

89.     The ignition caused by defective condition of the NaHS in Question directly and proximately caused Brian to:

(i)     Suffer serious personal injuries;

(ii)     Endure physical pain and suffering;

(iii)     Suffer mental and emotional distress;

(iv)    Incur unnecessary medical expenses;

(v)    Suffer lost wages and loss of earning capacity;

(vi)    Endure disfigurement;

(vii)    Suffer emotional distress, mental anguish, terror, knowledge of bodily injury and impending death;

(viii)    Funeral expenses; and

(ix)    Suffer other injuries as the evidence may show.

90.    The ignition caused by the defective condition of the NaHS in Question directly and proximately caused Kristie to:

(i)    Suffer mental and emotional distress;

(ii)    Incur unnecessary expenses in connection with the care of Brian;

(iii)    Endure a loss of consortium, comfort, and society; and

(iv)    Suffer other injuries as the evidence may show.

91.    By reason of the foregoing and pursuant to sections 15-5-90 and 15-51-10 of the South Carolina Code, Plaintiff is entitled to recover for all damages directly and proximately caused by Defendants and the defective condition of NaHS in Question when sold.

## REQUEST FOR PUNITIVE DAMAGES

92.    Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

93.    The actions and inactions of the Defendants were of such a character as to constitute a pattern or practice of willful, wanton, and reckless misconduct causing substantial harm and resulting in damages to Plaintiff.

94.    More specifically, the Defendants acted with a conscious and flagrant disregard for the rights and safety of Brian, and/or deliberately engaged in willful, wanton, and reckless disregard for the life and safety of Brian.

95.    By reason of the foregoing and pursuant to sections 15-5-90 and 15-51-10 of the South Carolina Code, the Defendants are liable to Plaintiff for punitive and exemplary damages.

## PRAYER FOR RELIEF

96.    WHEREFORE, Plaintiff prays as follows:

(i)    For a trial by jury and judgment against all Defendants, jointly and severally;

(ii)    For such sums as actual and other compensatory damages, including pain and suffering and permanent impairment, in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Court;

(iii)    For exemplary and punitive damages against all Defendants, in an amount as a jury may determine to halt such conduct;

(iv)    For the costs of this suit, including attorney's fees; and

(v)    For such other and further relief to which they may be entitled, including any relief authorized under sections 15-5-90 and 15-51-10 of the South Carolina Code and that this Court deems just and proper.

[Signature block appears on following page.]

Respectfully submitted,

By:  */s/ Marlon E. Kimpson*
　　　Marlon E. Kimpson (D.S.C. Bar No. 7487)
　　　William P. Tinkler (D.S.C. Bar No. 11794)
　　　**MOTLEY RICE LLC**
　　　28 Bridgeside Boulevard
　　　Mount Pleasant, South Carolina 29464
　　　(843) 216-9000
　　　(843) 216-9450 (facsimile)
　　　mkimpson@motleyrice.com
　　　wtinkler@motleyrice.com

　　　James Payne (*pro hac vice pending*)
　　　Matthew Matheny (*pro hac vice pending*)
　　　**PROVOST UMPHREY LAW FIRM, L.L.P.**
　　　490 Park Street
　　　P. O. Box 4905
　　　Beaumont, Texas 77704
　　　(409) 835-6000
　　　(409) 838-8888 (facsimile)
　　　jpayne@pulf.com
　　　mmatheny@pulf.com

　　　*Attorneys for Plaintiff*

Dated: August 26, 2016